**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CLASS ACTION**

David **HARRIS,** Yafest **OLIVER,** Craig **JACKSON,** Hayden **MARSHALL,** Devon **WATSON,** Bilal **LEWIS,** Johnny **ALEXANDER,** et al.,
Plaintiffs,

vs.

**SECRETARY GEORGE LITTLE, FORMER SECRETARY JOHN WETZEL, FORMER SECRETARY JEFFREY BEARD, PA DOC etal.,**
Defendants.

Docket No._____

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT**

Plaintiffs, David Harris, Yafest OLiver, Craig Jackson, Hayden Marshall, Devon Watson, Bilal Lewis, Johnny Alexander, etal., collectively files this Class Action Complaint as follows:

**PRELIMINARY STATEMENT**

This class action is being filed collectively by prisoners currently housed in the Intensive Management Unit on the Restricted Release List throughout the PA.D.O.C. seeking an injunction, compensatory and punitive damages, relief from cruel and unusual punishment and long term solitary confinement which has irreparably affected all mentioned prisoners in a system where the PADOC is attempting to mentally kill prisoners by self inflicted injury or by losing their sanity through experiments leading to some of the prisoners being found guilty but mentally ill which still subjects those prisioners on RRL to the PADOC's experiments in long term solitary confinement which has not been seen in America on this scale. All prisoners are denied due process, some for decades with perfunctory reviews at every turn while the PADOC adversely influences the PA.Parole Board to deny Parole while deeming the Plaintiff's a threat to society without misconduct or reports while safely releasing the states Deathrow Prisoners to general population. This is possible through manipulating secret, manufactured PA DOC documents that could never be challenged through an internal catch and release system for prisoners that graduated programs in solitary confinment which took years. No policy exists for RRL prisoners because they cannot appeal arbitrary decisions leading to RRL in violation of the PA. DOC's own rules and regulations, as a result, rules change in solitary confinment everyday as an experiment in Supermax Maximum Security Units without reasoning, explanation or appeal process in violation of the PA and U.S. Constitutions, The PA. D.O.C. ignores and down plays the serious mental health issues of IMU and MCU prisoners that the PA.D.O.C knows about in violation of both the PA. and U.S. Constitutions while under color of law.

## A. <u>Parties</u>

1.    Plaintiff, David Harris, is an adult individual incarcerated at the State Correctional Institution at Phoenix, (hereinafter SCI-Phoenix) located at 1200 Mokychic Drive Collegeville, Pa. 19426, complaining of the Defendant's and aver and allege the facts set forth in the paragraphs below.

2.    Plaintiff, Yafeast Oliver, is an adult individual currently incarcerated at SCI-Phoenix located at 1200 Mokychic Drive Collegeville, Pa. 19426, complaining of the Defendant's and aver and allege the facts set forth in the paragraphs below.

3.    Plaintiff, Craig Jackson, is an adult individual currently incarcerated at SCI-Phoenix located at 1200 Mokychic Drive Collegeville,Pa. 19426, complaining of the Defendant's and aver and allege the facts set forth in the paragraphs below.

4.    Plaintiff, Hayden, Marshall is an adult individual currently incarcerated at SCI-Phoenix located at 1200 Mokychic Drive Collegeville, Pa. 19426, complaining of the Defendant's and aver and allege the facts set forth in the paragraphs below.

5.    Plaintiff, Devon Watson, is an individual currently incarcerated at SCI-Phoenix located at 1200 Mokychic Drive Collegeville, Pa. 19426, complaining of the Defendant's and aver and allege the facts set forth in the paragraphs below.

6.      Plaintiff, Bilal Lewis, is an adult individual currently incarcerated at SCI-Phoenix located at 1200 Mokychic Drive Collegeville,Pa. 19426, complaining of the Defendant's and aver and allege the facts set forth in the paragraphs below.

7.      Defendant George Little is the Secretary of the Pennsylvania Department of Corrections, (hereinafter PA.D.O.C.), which is located at 1920 Technology Parkway Mechanicsburg Pa. 17050. Secretary Little is responsible for overseeing all State Correctional Institutions in Pennsylvania. Defendant Little is sued in his official capacity.

8.      Defendant John Wetzel is the former Secretary of the PA.D.O.C, which is located at 1920 Technology Parkway Mechanicsburg, Pa. 17050. Defendant Wetzel served as the Secretary of the PA.D.O.C. from 2010 to October 2021. He was replaced by Defendant Little. Defendant Wetzel is sued in his individual and official capacity.

9.      Defendant Jeffrey Beard served as the former Secretary of the PA.D.O.C, which is located at 1920 Technology Parkway Mechanicsburg, Pa. 17050 from  2001 to 2010. He was replaced by Defendant Wetzel. Defendant Beard is sued in his individual and official capacity.

## B. Jurisdiction and Venue

10.      This complaint includes claims made pursuant to the Civil Rights Act of 1964, 42 U.S.C. subsection 1983, which provides a cause of action for the "deprivation of any rights, pursuant to 28 U.S.C. subsections 1331 & 1343.

11.    This complaint also includes pendant state law claims, over which this Honorable Court has supplemental jurisdiction pursuant to 28 U.S.C. subsection 1367.

12.    Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. subsection 1391 because substantial parts of the events or omissions giving rise to this claim occurred within the territorial jurisdiction of this District Court and the Defendant's are subject to personal jurisdiction within this District.

## C. <u>Facts</u>

13.    Defendant David Harris is a prisoner currently housed in SCI-Phoenix.

14.    Mr. Harris has been continuously held in solitary confinement since 2006 and for most of his nearly twenty years of incarceration in Pennsylvania on the ("RRL") as a part of the PA.D.O.C.'s internal secret catch and release process where any infraction, including self defense leads to being placed on (RRL") as well as illegal, experimental programs in new Supermaximum Security Prisons without recourse.

15.    Mr. Harris was placed in and graduated from the now defunct Long Term Segregation Units  (hereinafter LTSU) as well as the Special Management Unit (hereinafter SMU) as an experiment to break him through mental agony as will be better explained herein.

16.    After thirteen years on the ("RRL"), Mr. Harris was placed in the general population at SCI-Albion  where all of the PA.D.O.C's stability D-Code prisoners were housed and because of this erroneous designation Mr. Harris was forced to deal with daily issues of Stability D-Code prisoners at SCI-Albion.

17.    After years of being isolated to his cell in  general population Mr. Harris was forced to defend himself and was returned to the ("RRL") without providing him with any meaningful rationale for the designation, nor any opportunity to appeal.

18.    When Mr. Harris was initially put on the ("RRL") in 2006 which was at that point known to prisoners as Harrisburg lockdown, only the Secretary of the PA.D.O.C had the ability to relaease certain prisoners to general population, Mr. Harris was denied any rationale for the designation, and denied the opportunity to appeal the designation.

19.    In 2022, Mr. Harris was placed in another experimental Supermaximum Security Unit, called the Intensive Management Unit (hereinafter IMU) on phase 6 and denied the opportunity to contest the placementor phase designation. No rationale was provided for the designation and no opportunity was provided to appeal the designation because the ("IMU") did not have a policy, nor does rules and regulations or something as simple as a handbook, creating further mental harm where everyday some new experiment as mentioned herein was done on Mr. Harris without recourse.

20.    Mr. Harris and all members of the class live in such conditions as mentioned herein that are so burdensome that they create punishment which exceed all bounds of decency.

21.    Since being thrown in these experimental units in Pennsylvania (all of which were shut down years later as experimental) Mr. Harris has never had the opportunity to challenge his placement on the ("RRL") with former Secretary Beard, former Secretary Wetzel and current Secretary Little, or be heard from them in any way, although the PA.D.O.C. Secretary is the only person with authority to place or remove prisoners from any ("RRL") designation.

22.    In the (IMU) Mr. Harris is deprived of social interaction, environmental stimulation, and proper mental health diagnosis and assessment due to his ("RRL") and ("IMU") designation.

23.    The unwritten, rumored idea is that this experimental ("IMU") program will take Mr. Harris and those of the class another five years or more at a minimum to reach phase 1 and once phase 1 is completed Mr.Harris and those of the class will be transferred to another Supermaximum Security Unit alleged to be the ("MCU") which could take more years before Mr. Harris is in a population setting.

24.     Mr Harris in his time in long term Solitary has not had the ability to seek help from this state sanctioned mental torture against black men because the PA.D.O.C continuously surrounds the Plaintiff with hand picked Psychologist, Psychiatrists, doctors, Peer specialists, PSS, and c.o. trained to maintain the Plaintiff in cruel and unusual conditions rather than provide the help needed where nothing but an actual suicide for the Plaintiff will suffice.

25.     Plaintiff, Yafeast Oliver is a prisoner currently housed in SCI-Phoenix.

26.     Mr. Oliver has been continuosly held in solitary confinement since 2014 when he was placed on the ("RRL") without providing him with any meaningful rationale for the designation, nor an opportunity to be heard or to appeal the designation.

27.     Mr. Oliver has been the subject of experiments of the PA.D.O.C's secret internal catch and release process merging from experimental programs to the next experiment conducted by the PA.D.O.C. once the previous unit is deemed defunct as an experiment.

28.     Mr. Oliver, like members of this Class action as well as separate suits in the federal Courts for the Western, Middle and Eastern District of Pennsylvania against the PA. D.O.C. was subject to the ("P.O.R.T.A.L") program as an experiment to break the Plaintiff mentally before the program was shut down, transferring the Plaintiff to the ("IMU") dealing only with ("RRL") prisoners as mentioned at length herein.

29.     After roughly five years on the ("RRL"), Mr. Oliver was placed in the ("P.O.R.T.A.L.") program which is another (Secret) Supermaximum Security Unit designed to break the Plaintiff mentally in solitary confinement under changing conditions and undiagnosed stability D-Code prisoners in lieu of mantaining prisoners in solitary confinement without providing him with any rationale for the designation, nor an opportunity to be heard, rebut the decision, or to appeal the designation.

30.     Mr. Oliver completing the ("P.O.R.T.A.L.") program when he was caught by the PA.D.O.C and released to the ("IMU") to start years of solitary confinement without misconduct, reasoning, opportunity to contest the designation and denied an appeal process for an experiment that was being made out of thin air by the PA.D.O.C while being placed in phase 6.

31.    Mr. Oliver in his time in Long Term Solitary Confinement has not had the ability to seek help from this state sanctioned mental torture against men because the PA.D.O.C. continuously surrounds the Palintiff with hand picked psychologist, psychiatrist, doctors, peer specialists, PSS, and c.o's trained to maintain the Plaintiff in cruel and unusual punishment rather than provide the help neded where nothing but an actual suicide will suffice.

32.    Plaintiff Craig Jackson is a prisoner currently housed in SCI-Phoenix.

33.    Plaintiff Jackson has been continuously held in solitary confinement since April 30, 2018 when he was placed on the ("RRL") on March 11, 2019 without being provided any rationale for the designation, nor an opportunity for rebuttal or appeal contest the erroneous placement.

34.    In 2021, Mr. Jackson was placed in the IMU on phase 6 under duress to sign documents stating that he agrees to participate in a program that doesn't exist under threats of losing parole opportunities within months of arriving to the IMU without being provided any reasoning why he was in the IMU which didnt yet exist as it was being called the LTSU by then former secretary Wetzel.

35.    Mr. Jackson was denied an opportunity to rebut any evidence used against him for his placement in the IMU as well as the phase designation warranting another 5 years of solitary confinement at a minimum with no appeal process.

36.    Mr. Jackson has been targeted by the Mental health department in making false evaluations against the Plaintiff deeming him a threat to society without misconducts or reports to support such evaluation simply because he does not feel safe talking to racist, hand picked personnel that continues to ignore his mental health needs who oftentimes laugh when he explains what he feels from being in solitary confinement for so long.

37.    Mr. Jackson was threatened by the Program Review Committee at SCI Phoenix with never getting out of solitary confinement unless he completed the IMU and that he would be prevented from completing approved programs on his prescriptive plan during his placement within the IMU which ultimately was one of the reason why he was denied the opportunity for

7

Parole.

38.    Mr. Jackson was told by the unit team and program review committee that the prison at SCI-Phoenix or any other IMU program couldn't justify ever recommending the Plaintiff or any other prisioner housed in the IMU for parole simply because they're being housed in the IMU, stating by Deputy Superintendent Terra: " How could we possibly deem you a threat to the general population inPennsylvania and not a threat to society ".

39.    The Pennsylvania Parole Board listened to the Pennsylvania Department of Corrections and denied Mr. Jackson Parole as well as every other parole eligible prisoner housed in the IMU for the exact same reason of not being able to ever receive a favorable recommendation from the PADOC and the denials are a rubber stamp also known as identical form denial letters with different prisoners name and numbers on it where the PA Parole Board would consider seeing Mr.Jackson and all other prisoners again on the same date one year later.

40.    While the PA Parole Board will see Mr. Jackson and all prisoners of this class in or after June of 2023, the only thing the PA Parole Board will consider year after year in the IMU is whether Mr. Jackson and those of this  class action will have a favorable recommendation from the PADOC, whether Mr. Jackson and those of the class action has a clear conduct record which is undefined pursuant to PADOC policy and whether the Plaintiff and in one out of five cases whether or not a member of the class completed programs within the IMU that the PADOC will not allow the Plaintiff to take.

41.    Mr. Jackson and those of the class action is being denied the opportunity for parole because the Plaintiff and those of the class could never do anything to gain the PADOC's recommendation for parole even though the Plaintiff and members of the class has gone years without misconduct.

42.    Mr. Jackson and those of the class action is denied the opportunity to know what they could do to gain a favorable opportunity for parole from the PADOC.

43.    The Plaintiff's are deprived of social interaction, environmental stimulation, proper diet, proper mental health diagnosis because of their IMU and RRL designation.

44.     The PA.D.O.C. has transferred the Plaintiff's of the class action to various institutions within the Department of Correctons but the cells have uniformly been only about the size of a parking space, which was further reduced by a toilet, sink and poured concrete " sleeping platform, " with the cell windows covered, no mirrors, shelves, lockers or stools in sitting position on the walls, leaing very little room for movement.

45.     The Pennsylvania Department of Corrections designed the cells in a staggered formation, to prevent any of the capital case prisoners from seeing each other, then as a result of lawsuits in 2019, the PA.D.O.C. ended solitary confinement for Pennsylvania's death-row prisoners, releasing al of them to the general population, leaving all prisoners on RRL in those cells to be experimented on for years to come.

46.     The Plaintiffs of this class action on RRL spends practically all of their time alone in their cells as the only alternative for out of cell is to undergo strip searches and attend a yard full of feces and  urine that's not always cleaned in a small outdoor cage which is approximately the same size as the cells, showers three times a week as a privilege, or attend a group session that serves no purpose around other mentally unstable prisoners, belted, handcuffed and shackled through a table whichh resembles the unnecessary restraints on a human being that one would see in the  prison movie "Conair".

47.     These long-term deprivations of environmental stimulation and social interaction violates the Eighth Amendment's prohibition on cruel and unusual punishment due to the cognitive impairment, chronic depression, emotional pain and suffering, and other psychological harms that the Plaintiff's of this class action can't report to PADOC personnel that they're being subjected to when they see prisoners cutting themselves and  their testicals out of the scrotum for years before the PADOC does anything to help which starts with all prisoners being housed in a dirty cell naked with a filthy smock for reporting any mental health issues that goes untreated which keeps thoughts of suicide at the forefront of prioners in the IMU on RRL.

48.     The Plainitff's, Mr. Harris, Mr.Oliver, Mr. Jackson and those of this class action is confined to cells illuminated by artificial lights, 24 hours a day. The lights are never turned off, guards make rounds every fifteen minutes during the day, and every thirty minutes at night

jingling loud keys and arguing with prisoners which is compounded by a noisy solid steel door that has to open and close when those rounds are continuously opened and closed. The repeated process of entry and exit from each tier, and the use of bright flashlights during the checks, made sleep non existant at any time of the day or night creating sleep deprivation, insomnia, rage, and other psychological issues as explained at length herein.

49.    Visits and opportunities are concluded with mandatory cavity strip searches going out and back inside of the cell, in secured areas the Plaintiff's are belted, handcuffed, seated on a steal manufactured steel bar and shackled to another piece of inmovable metal the width of a bat for forty five minutes in front of family members for no reason other than to cause pain to the Plaintiff's family and for two hours in the mini law library causing bruising from the cuffs and trying to litigate in handcuffs, belts and shackles

50.    Due to 24 hour lighting and noise, Mr. Harris and those of the Class has only received an average of three to four hpurs of interrupted sleep per night, causing extreme sleep disorder and disruption to his circadian rhythms.

51.    The perpetual lighting caused Mr. Harris and those of the class continue to experience the disorienting sensation that there was never a meaningful transition from daylight to darkness, for most of his incarceration in restricted housing units within the PADOC.

## STATE SANCTIONED TORTURE AND EXPERIMENTS OF PRISONERS

52.    Plaintiff of the class action incorporates his allegations from Paragraphs 1 through 52 as if the same were more fully set forth at length herein.

53.    The Defendants have created oppressive behavioral modification units such as the (SMU, STGMU, LTSU, SSNU, BMU, DTU, MCU, IMU), etc. to conduct experiments as recorded herein against predominantly black men on RRL to drive them crazy in long

term solitary confinement without treatment, then turn around and lean on their behavior in attempts to continue to torture those of the class until they either kill themselves or hurt someone as a result of the mental health problems that the PADOC created to continue the state sanctioned cycle of cruel and unusual punishment and torture.

54.    The Defendant's have subjected those of the class actions to a collection cruel and unusual treatements, some for decades, without and due process where previous lawsuits that the PADOC has lost on the matter which paid out hundreds of thousands of dollars in individual lawsuits on the matter of long term solitary confinement  with the goal of breaking, torturing  or killing the Plaintiff's of this class which are carried out as mentioned below:

    A.    Physically removing those of the class to multipe supermaximum security control units around the most racist and oppressive employees trained to further exacerbate the minds of the Plaintiff's within these units in areas sufficiently isolated to effectively break and seriously weaken close emotional ties with family or anyone an emotional relationship exists which makes the Plaintiff's disregard their own life on the Planet.

    B.    Segregating of all natural black leaders in the PADOC that refuse to work with the administrations as snitches or who do not suffer from stockholm syndrome with or without misconduct and leaning on a history of those black men who have shown for years that they have changed.

    C.    Depriving the Plaintiff's of the class of sleep, through manufactured environments of untreated serious mentally ill prisoners, denying proper diets, only selling junk food to the Plaintiff's for decades from unit to unit so that the diet also works to kill the Plaintiff's in long term solitary confinment.

    D.    Prohibition of group activities not in line with brainwashing objectives of the PADOC, spying on the prisoners with other prisoners as well as using in cell two-way audio speakers which draws the Plaintiff's into a state of not talking and becoming so reclusive that the Plaintiff's are all considered anti-social because the Plaintiff's believes everyone is spying on them.

    E.    Tricking men into written statements which are then shown to other prisoners that exploit, humiliate and promote the idea that everyone around them is an opportunist or informant, to a point where the Plaintiff's belive that everyone on the planet should be actively mistrusted, and convincing other prisoners that they can trust

no one.

F.      Treating those Plaintiff's that are willing to collaborate in far more lenient ways like promoting them ahead of other prisoners that don't collaborate so that they get out of this form of torture as a tool of rewarding and punishing those that are not breaking any rules but also not collaborating.

G.      Systemic withholding of mail, building a group among the Plaintiff's convincing them that they have been abandoned by and completely isolated from the social order and brainwashing those eligible for parole possibilities into believing that they are a threat to society as a whole without anything to support such a narrative.

H.      Placing the Plaintiff's into new and ambiguous situations like the IMU and MCU for which the standards, reasons are deliberately left unclear and then putting pressure on the Plaintiff's to conform to what is desired in order to win favor and a reprieve from the pressure of long terms solitary confinement which led to all of the Plaintiff's being tricked into signing documents under duress, made by the PADOC saying that the Plaintiff's agreed to such cruel and unusual punishment.

I.      Placing individuals whose willpower has been severely weakened or eroded into a living situation with several others who are more advanced in their thought reform and whose job it is to further the undermining of those individuals' emotional supports which were begun by isolating them from family and friends.

J.      Using techniques of character invalidation, revilement, shouting to induce feelings of guilt, fear and suggestibility, coupled with sleepnessless, and exacting new IMU regimens whiuch continually change and conducting periodic interrogational interviews of the Plainitff's.

K.      Meeting all insincere attempts to comply with the PADOC's new unit's unwritten objections with renewed hostility.

L.      Rewarding of submission and subservience to the attitudes of the PADOC, encompassing  the brainwashing objective with a lifting of pressure on the Plaintiff's.

M.      Subjecting the Plaintiff's to so many torturous and cruel and unusal punishments under the guise of Administrative custody that the Plaintiff's that which never previously suffered from mental health problems are coerced, manipulated into and sometimes forced into taking experimental psychotropic medications and changing and increasing the doses so high that the Plaintiff's begin exhibiting "Zombie-like behavior" as a result of the type of drugs administered to them against or with their their consent.

N.      Surrounding the Plaintiff's with employees that administer experimental programs that suggest that tells the Plaintiff's that they are the worse individuals on

earth and employees repeating that sticking point every day to the Plaintiff's.

O.    Holding prefunctory mental health meetings where the PADOC psych staff disregards the mental health issues that the Plaintiff's are showing and talking about to maintain the teaching practices of the new unit in place at the time.

P.    Admitting the Plaintiff's into new, undeveloped Supermaximum Security Control Unit year after year and changing it's name for the public while continuing the same brainwashing, torturous and cruel and unusual punishment and transferring Plaintiff's that complain of said treatment into facilities in mountainous areas to continue said treatment.

Q.    Defendant's force the Plaintiff's into incriminating themselves with respects to criminal activity where information gathered or obtained in the IMU and MCU is capable of being used in criminal investigations against the Plaintiff's.

55.    The Plaintiff's Mr. Harris, Mr. Oliver, Mr. Jackson, Mr. Marshall, Mr. Lewis, Mr. Alexander, Mr. Wade, Mr. Cottle and other class members asserts that this treatment of **Black RRL prisoners** is rooted inunbridled racism and brutality in addition to the use of solitary confinement being deeply rooted in racism. see " A more perfect union " attached hereto.

56.    Racist statistics prove that of the 140 prisoners on the RRL in Pennsylvania, 80 % of those prisoners are black prisoners where 38% of the population in Pennsylvania and of those 80 % of black men on RRL more than 75% have been through multiple control units, transferred into other control units prior to or after completion of the program, or labelled a threat to population without a remedy of law.

57.    Plaintiff's Mr. Harris, Mr.Oliver, Mr.Jackson, Mr. Marshall, Mr. Lewis, Mr. Alexander, Mr. Wade, Mr. Cottle and other  class members asserts that they have been, strategically and illegally taken off the mental health roster by PADOC staff across the board as a form of driving Plaintiff's to suicide without treatment, then had their stability codes decreased from Stability **D** to Stability **C** codes, then from stability **C** to stability **B** codes abd removal from the mental health roster all together while they suffer from serious mentally ill issues.

58.    Plaintiff's Mr. Harris, Mr. Oliver, Mr. Jackson, Mr. Marshall, Mr. Lewis, Mr. Alexander, Mr. Wade, Mr. Cottle and other class members have reported the serious mentally ill issues to PADOC personnel to no avail and some members of the class have been denied psychotropic medicaitions simply to keep them off of the mental health roster, although they were previously on the mental health roster for issues that range from suicide attempts through overdose or other forms of self inflicted harm to serious depression, insomnia, constant headaches, mental anguish, uninterrupted stress, loss of mental health, short term memory loss, constant anxiety, continuous mood swings, fear, paranoia, constant aggravation, sensitivity to sounds as a result of long term  solitary confinement, sensitivity to quiet as a result of long term solitary confinement.

## DEFENDANT'S KNOWLEDGE OF THE RISKS INHERENT IN MAINTAINING PLAINTIFF'S IN LONG TERM SOLITARY CONFINEMENT

**A.**    At all times relevant to this lawsuit, Defendant's Beard, Wetzel and Little knew the risks proposed by long term solitary confinement and knew that Mr. Harris, Oliver, Jackson, Marshall, Watson, Lewis, Alexander and other members of the class action was suffering from their long Term Solitary Confinement from reports that they made to the PADOC psychiatrist and psychologist departments, prison guards, counselors, teachers, program review committees and central office where the Secretaries of the PADOC are located, and yet all of these Secretaries failed to take reasonable measures to end the deprivation of the Class's basic human needs and in turn only addressed the basic human needs of the states deathrow prisoners after making those class members suffer for decades in long term solitary confinement.

**B.**    Defendant Wetzel has previously testified that he was aware of the body work of literature describing the effects of long-term solitary confinement and settled numerous individual lawsuits on the matter such as: _Shoats v. Wetzel; Arthur Johnson v. Wetzel; Norman Johnson v. Wetzel._ on the issue of denying prisoners due proces and subjecting them to cruel and unusual punishment and like many other prisoners in these control units like Mr. Harris the doctrine of continuation applies which the Defendant has knowledge of.

14

C.    Dr. Stuart Grassian is a Board Certified Psychiatrist who was on the faculty of the Harvard Medical School for over twenty-five years. He is a world renowned expert on the psychiatric effects of solitary confinement and has had extensive experience in evaluating the psychiatric effects of solitary confinement.

D.    In the course of his professinal involvement, Dr. Grassian has opined as an expert regarding the psychiatric impact of federal and state segregation and disciplinary units and Dr. Grassian's body of scholarly work was recognized by Supreme Court Justice Kennedy in his concurring opinion in _Davis v. Ayala,_ 576 U.S. 257, 289 (2015) (" research still confirms what this Court suggested over a century ago: Years on end of near-total isolation exact a terrible price... common side effects of solitary confinement include anxiety, panic, withdrawal, hallucinations, self mutilation, and suicidal thoughts and behaviors ") all of which has been displayed by members of this class action in some or all forms.

E.    Dr. Grassian is the author of Psychiatric Effects of Solitary confinement, 22 Wash. U.J.L. & Pol'y 325 (2006) and several other scholarly works on the psychtriatric effects of solitary confinement.

F.    While Secretary Little learned of the effects of long term solitary in Tennessee as well as under the practices of former Secretary Wetzel, Former Secretary

Wetzel learned of its use under the leadership of former Secreatary Beard who is a PHD and after his tenure former Secretary Beard took these cruel and unusual practices that he nurtured in Pennsylvania and took them into the California Department of Corrections which led to a nation wide hunger strike causing that resulted in the death of many prisoners in california leading to the rulings in *Asker v. Brown.*

   G.    Defendant Wetzel has previoously admitted he was specifically familiar with Dr. Grassian's research and had discussed Dr. Grassian's findings with other doctors and Defendant Little  previously acknowledged that he understands the effects of solitary confinement but when he looks at solitary confinment he has to look at it in terms of behavioral management.

   H.    Defendant Wetzel has previously admitted that an inmate's mental health should be considered when placing an inmate in long-term solitary confinement, yet it is not considered for memebers of this class just like it was not considered for Deathrow prisoners.

   I.    In recent years, the use of solitary confinement has been publicy condemned as unnecessary and inhumane. when he described the *Davis* case cited above, Justice Kennedy told the House Appropriation Subcommittee on Financial Services and General Government: " This idea of total incarceration just isn't working,

and it's not humane... Solitary confinement literally drives men mad. "

J.    In 2016, the Pennsylvania Department of Corrections publicly acknowledged "the need to reduce the use of administrative segregation ( known as restrictive housing in Pennsylvania)" and vowed that it "is committed" to doing this. yet the practice continues.

## **LEGAL STANDARD**

K.    The Supreme Court has interreted the Eighth Amendment "to impose affirmative dujties on prison officials to 'provide humane conditions of confinement.'" *Young v. Martin,* 801 F.3d 172, 177 (3rd Cir. 2005) (quoting *Farmer v. Brennan,* 511 U.S. 825, 832 (1994)).

L.    The United States Supreme Court has explained " that the length of confinement [in isolation] cannot be ignored in deciding whether the confinement meets constitutional standards. "*Hutto v. Finney,* 437 U.S. 678, 686 (1978); see also *Young, 960 F.2d at 364 ("the duration and conditions of segregated confinement cannot be ignored in deciding whether such confinement meets constitutional standards.").*

M.    The Third Circuit has followed. See *Union Cnty Jail Inmates v. Di Buono,*

713 F.2d 984, 1000 (3d Cir. 1983)(length of confinement a factor in analyzing conditions under the Constitution); _Peterkin v. Jeffries,_ 855 F.2d 1021, 1025 (3d,Cir. 1988) ("objective factors which a court must examine in prison conditions cases include basic humn needs such as food, shelter, and medical care as well as sanitation, safety, the physical plant, educational programs, the length of confinement, and out of cell time."); _Nami v. Farmer,_ 82 F.3d 63, 67 (3d Cir. 1996)("the lenght of confinment, the amount of time prisoners spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunities for activities outside the cells, and the repair and functioning of basic physical facilities such as plumbing ventilation and showers").

N.    In _Sandin v. Conner,_ 515 U.S. 472 (1995), the Supreme Court concluded that state-created liberty interests arise when a prison's action impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." at 484.

O.    In _Shoate v. Horn,_ the Third Circuit held "we have no difficulty concluding that eight years in administrative custody, with no prospect of immediate release in the near future, is 'atypical' in relation to the ordinary incidents of prison life, and that [plainitff's] eight-year confinement subjects him to conditins that differ significantly from 'routine' prison conditions in Pennsylvania state institutions" thereby posing

significant hardship on the plaintiff. 213 F.3d 140, 144 (3d Cir. 200).

P.    In _Hewitt v. Helms, 459 U.S. 460, 476 (1983), the Supreme Court_ explained that inmates who were being placed insolitary confinement for administrative -- rather than disciplinary -- reasons, were entitled to due process. The Court explained what process was due:

- An inmate must merely recieve some notice of the charges against him and an opportunity to present his views to the prison officials charged with deciding whether to transfer him to administrative segregation. Ordinarily a written statement by the inmate will accomplish this purpose, although prison administrators may find it more useful to permit oral presentation in cases where they believe a written statement would be ineffective.

Q.    This principal was reaffirmed in _Wilkerson v. Austin,_ 545 U.S. 209, 228-29 (2005) when the Supreme Court held that due process required: (a) notice of the charges against prisoner, (b) an opportunity to be heard, and (c) notice of an adverse decision.

R. In 2017, the Third Circuit has emphasized that "this right to procedural due process protections is neither abstract nor symbolic, but both meaningful and required." _Williams v. Sec'y Pa. Dept. of Corr.,_ 848 F.3d 549 (3rd. Cir 2017).

---

[1] _Accord DeSpain v. UpHoff,_ 264 F.3d 965, 974 (10th Cir. 2001)("in general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an eighth amendment violation, while "substantial deprivation of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." _Sheley v. Dugger,_ 833 F.2d 1420, 1429 (11th Cir. 1987)(duration of solitary confinement cannot be ignored by courts); _Peppering v. Crist,_ 678 F.2d 787, 789 (9th Cir. 1982)("the deprivations associated, exercise abnormal vocational and educational activity, they constitute a due process violation, as well as a

## VIOLATION OF THE EIGHTH AMENDMENT

## DELIBERATE INDIFFERENCE

59.     Plaintiff's Mr. Harris, Mr. Oliver, Mr. Jackson, Mr. Marshall, Mr. Lewis, Mr. ALexander, Mr. Wade, Mr. Cottle and other members of the class have been held in solitary confinement for years as mentioned and counting without any explanation for their status or any opportunity to challenge it on RRL as well as housing in multiple Supermax Units and they have each explained with specificity to PADOC staff going all the way to the Secretary of the PADOC that they are experiencing the following effects from their long term solitary confinement as recorded herein. To protect the confidentiality and retailtory conduct of the Plaintiff's the Plaintiff's have recorded the major effects that they have collectively sought relief from as follows **as the Plaintiff's have lost hope in life.**

60.     Defendant Beard, Wetzel and Little failed to properly promulgate new ambiguous, defunct Control unit pursuant to the Administrastive Code, Pennsylvania Regulatory review Commission, Pennsylvania Documents Laws, approved, implemented and enforced multiple Supermax Security Units out of thin air such as the IMU, MCU, RTU, BMU, SMU, STGMU, SRTU, LTSU, PORTAL while subjecting the Plaintiff's to the violations as mentioned herein.

61.     Defendants Beard, Wetzel and Little, failed to promulgate, but approved, implemented and enforced the prior and current DC ADM 802 policy which forbids the Plaintiff's from ever contesting, knowing of or appealing their placement on the RRL and Supermaximum Security Units such as the IMU and MCU which keeps the Plaintiff's in long term solitary confinement indefinitely and being denied parole opportunitieswhile being subjected to the constitutional violations as mentioned herein.

---

violation of the eighth amendement, if they persist too long.") O Brien v. Moriarty, 489 F.2d 941, 944 (11 Cir. 1974)(" imposing inappropriately, or for too long a period, even the permissible forms of solitary confinement might violate the eighth amendment. Cases upholding instances of solitary confinement involve most often it's imposition as a short-term punishment for disciplinary infractions.")

62.     At all times relevant to this complaint, Defendants Beard, Wetzel and Little were acting under color of state law and in their capacities as representatives of the PADOC.

63.     The Defendants were aware of the fact that ▨▨▨▨ members of this class action are being subjected to cruel and unusual punishment even after having been admitted to mental health hospitals voluntarily or involuntarily through suicide attempts, castration of their testicles, cutting themselves with razor blades, drinking urine as a result of their mental health issues, eating and smearing feces, which indicated the severly negative impact of long term solitary confinement.

64.     As a direct and forseeable result of Defendant's Beard, Wetzel, and Little deliberate indifference to the Plaintiff's mental health needs with a total disregard for the law as well as the previous settlement by the Disabilities Network v. Wetzel No.1:13-cv-00635 Middle District, the Plaintiff's have suffered cruel and unusual punishment at the hands of the PADOC which is not limited to these things which are well documented by the Plaintiff's to the Defendant's such as:

    a.  Loss of mental health;

    b.  Depression

    c.  Severe Depression

    d.  Anxiety

    e.  Constant and uninterrupted Stress which created more than hair loss

    f.  Constant headaches

    g.  Suicidal thoughts

    h.  Mental Anguish

    I.  Constant irritability

    j.  Short term memory loss

    k.  Hearing voices

    l.  Trouble determining real from fake

21

m. insomnia

n. PTSD

o. fear

p. paranoia

q. constant mood swings

r. sensitivity to environmental stimuli such as noise or quietness, light or darkness;

s. Constant anger

t. hypertension

u. Diabeties and high blood pressure from only being able to buy cakes and snacks

v. Excellerated heart beat

w. Constant laughter or crying

x. fears of a targeted black man that will never be helped

y. fears of continuously being experimented on by racist white men with no recourse

z. Inability to distinguish from who cares as a human being from those that wants to continue the Plaintiff's in long term solitary confinement.

A1. Treatment which fell below the minimum standards required by the Eighth

Amendment to the United States and Pennsylvania Constitutions.


**WHEREFORE**, The Plaintiff's and similarly situated individuals respectfully requeststhat this Honorable Court enter judgment in his favor and against Defendant's Beard, Wetzel and Little, in an amount in excess of $75,000.00 and $10 Million in punitive damages, along with all other relief permitted by law.

## VIOLATION OF THE FOURTEENTH AMENDMENT

## VIOLATION OF DUE PROCESS RIGHTS

65.     Plaintiff's of the class action incorporates their allegations from Paragraphs 1 through 65 as if the same were more fully set forth at length herein.

66.     The Plaintiff's Mr. Harris, Mr. Oliver, Mr. Jackson, Mr. Marshall, Mr. Lewis, Mr. Alexander, Mr. Wade, Mr.Cottle and other class members have been held in solitary confinement for years as mentioned and counting without any explanation for their pstatus or any opportunity to challenge it on RRL as well as housing in multiple Supermax Units.

    a.  Plaintiff Harris, fourteen of the last sixteen years in long term solitary confinement;

    b.  Plaintiff Oliver, Eight years continuous long term solitary confinement;

    c.  Plaintiff Jackson, Four years continuous long term solitary confinement;

    d.  Plaintiff Marshall, four years continuous long term solitary confienment;

    e.  Plaintiff Watson, Five years continuous long term continuous conefinement;

    f.  Plaintiff Lewis, four years continuous long term solitary confinement;

67.     The Plaintiff's and other members of the class are entitled to due process in regards to their placement on the RRL and Specialized Units, including an opportunity to be heard by the decision-maker, the Secretary of the Department of Corrections.

68.     The Plaintiff's and other class members has not been permitted any type of process whatsoever and this constitutional violation continues.

69.     The Plaintiff's and other class members have never had the opportunity to address the decision-makers, Defendants Beard, Wetzel and Little, who were the only persons who could have released the Palintiff's from solitary coenfinement.

70.     As a direct and forseeable result of this deprivation, The Plaintiff's and other members of the class was held in solitary confinement collectively for so long without the benefit of due process for well over **two hundred years of combined long term solitary confinement amongst the Plaintiff's**. which is something that should never take place in a country like the United States of America causing pain and suffering as follows:

    a. Loss of mental health;

    b. Depression;

    c. Severe Depression;

    d. Anxiety;

    e. Constant and uninterrupted stress which created more than hair loss;

    f. Constant headaches;

    g. Suicidal thoughts;

    h. Mental Anguish;

    i. Constant irritibility;

    j. Short term memory loss;

    k. Hearing voices;

    l. Trouble determining real from fake;

    m. Insomnia;

    n. PTSD;

    o. Fear;

    p. Paranoia;

    q. Constant mood swings;

    r. Sensitivity to environmental stimuli such as noise or quietness, light or darkness;

    s. Constant anger;

    t. Hypertension, back and shoulder problems from bad bedding;

    u. Diabetes and high blood pressure from only being able to buy cakes and snacks;

v.  Excellerated heart beats;

w.  Constant laughter or crying;

x.  Fears of targeted black men that will never be helped;

y.  Fears of continuously being experimented on by racist white men with no recourse;

z.   Inability to distinguish from who cares as a human being from those that wants to continue thre Plaintiff's in long term solitary confinement;

a1.  Treatment which fell below the minimum standards required by the Fourteenth Amendment;

a2.  Failure to provide the Plaintiff's and members of the class with any evidence warranting palcement into the IMU and MCU or (RRL) and to provide safeguards for erroneous placements;

a3.   Failure to adhere to the Administrative code P.S. subsections 51-734 whereas Defendants Beard, Wetzel and Little is not  empowered to issues a policy which state inconsistent with state law;

a4.   Failure to properly amend DC-ADM-801, 802, 804 in accordance with the procedures under the Commonwealth Documents Law;

a5.   Failure to give public notice of it's intention to promulgate, amend or repeal any administrative regulation regarding the existence of multiple Supermaximum Security Specialized Housing Units in accordance with section 201-208 of the Commonwealth Documents laws, 45 P.S. Subsections 1201-1208;

a6.   Failure to adhere to section 506 of the Administrative code, 71 P.S. subsection 186;

a7.   Failure to properly promulgate policies as regulations pursuant to 37 Pa. Code subsection 93.2 (g).

a8.   Failure to properly acknowledge title 37 Pa. Code subsection 93.11 (b) wherein administrative custody is not to be used for disciplinary purposes as outline in phase 6 and 5 of the IMU handbooks.

**WHEREFORE** The Plaintiff's and similarly situated individuals respectfully  requests that this Honorable Court enter judgment in his favor and against Defendant's Beard, Wetzel and Lttle, in an amountin excessive of $75,000.00 and $10 Million in punitive damages, along with all other relief permitted by law.

## ( CLASS ACTION ALLEGATIONS)

**A.**     Plaintiff's assert upon statistical information and belief, the Defendants did knowingly, wantonly and recklessly create a secret catch and release process known only to upper management in the PA.D.O.C. specifically targeting black men as the subject of these catch and release processes throughout the State system which resulted in **80%** of the **140 RRL prisoners** being black men.

**B.**     Upon information  and belief, the Defendants did knowingly, wantonly and recklessly create multiple control units out of thin air such as the (SMU, STGMU, DTU, LTSU, PORTAL, BMU, IMU and MCU), in violation of the Plaintiff's right, without taking any steps under state law to properly promulgate those units whatsoever.

**C.**     Upon information and belief, the Defendants will continue to violate state and federal law as well as their own rules, regulations and policies regarding the operation of the IMU's and MCU's and conditions of predominately black prisoners illegally maintained within those units.

**D.**     Upon information and belief, information ascertainable through discovery might be sufficient to identify all members and consequently  to define the class by that party's records.

**E.**     In the alternative, due to the unusual situation that may arise, where neither the Plaintiff's nor the Defendant's would have access to records sufficient to identify individual class members, the Plaintiff's propose that unless the actual 'Department' of Corrections can be made a party, the class be defined by use of an opt-in procedure pursuant to the rules of court, subject to exclusion or inclusin based on a list of prisoners with prior dealings with the Defendant's to be provided by the Defendant's.

**F.**     Given the challenges of this action, Plaintiff's have sought appointment of counsel that has no conflict of interest in this litigation who would thus fairly and adequately assert and protect the interests of the class.

**G.**    The Court could take judicial notice of the many Federal lawsuits in Pennsylvania moving through the Circuit Court in the Middle, Eastern, and Western District Courts on the same issues as mentioned within this Class Action and the Constitutional violation of the PADOC surrounding long term solitary confinement

- Michael Rivera v, Wetzel, et al, Western District of Pennsylvania;

- Gary Tucker v. Wetzel, et al, Western District of Pennsylvania;

- Wayne v. Wetzel, et al, Eastern District of Pennsylvania;

- Stephon Batchelor v. Wetzel, et al, Eastern District of Pennsylvania;

- Shekir Thomas v. Little, et al, Eastern District of Pennsylvania;

- William Mayo v. Wetzel, et al, Western District of Pennsylvaina;

- Luquan Williams v. Wetzel, Little, et al, Eastern District of Pennsylvania;

- William Victor v. Wetzel, Little , et al, Eastern District of Pennsylvania;

- Hasan Tucker v. Wetzel, Little, et al, Eastern District of Pennsylvania;

- Caine Pelzer v. Beard, Wetzel, Little, Western District of Pennsylvania;

**H.**    Plaintiff's and other members of the class thus allege that they have been harmed as mentioned herein and will continue to be harmed by the PADOC's disregard of the law, disregard of their own policies in creating secret rules, regulations, handbooks, secret control units and omissions complained of herein, taken as a whole violates the Plaintiff's and other members of the class rights under the Pennsylvania and United States constitutions.

**I.**    Plaintiff's and other members of the class action seek adequate psychiatric and psychological care to be free from cruel and unusual punishment and the abolition of indefinite solitary confinement in Pennsylvania under the 8th Amendment to the Pa. and U.S. Constitutions.

**J.**    Plaintiff's and other members of the class action seek to have their due process restored under the Pa. and U.S Constitutions.

**K.**    Plaintiff's and other members of the class action seek to be able to petition the government  for redress of grievances under the 1st Amendments.

**L.**    Equal protection of the laws and due process of law under the 1st Amendments to the Pa. and U.s Constitutions.

27

**WHEREFORE,** The Plaintiff's pray of the Court :

1.      That the Defendant's and the Plainitff's, following due notice  and rule to show cause why a preliminary injunction should not be issued, and show cause why a preliminary injunction should not issue during the pendency of this complaint, according to the prayer of the complaint.

2.      That an injunction shall issue, preliminarily until final hearing and for a period of two years, therefore, enjoining and restraining the Defendant's from willfully violating the Plainitff's rights as articulated in this Class Action Complaint.

3.      That an injunction shall issue, prleliminarily until final hearing and for a period  of two years, thereafter, enjoining and restraining the Defendant's from further orchestrating the threats and/or attacks or participating in the acts complained of in the complaint.

4.      That an injunction shall issue, preliminarily until final hearing, and for a period of two years thereafter, enjoining and restraining the Defendnant's from making fake rules inconsistent with the law and policy which constitutes fradulent and deceptive business practices and a deprivation of the Plaintiff's rights in vilation of state law as mentioned herein in violation of the 1st, 4th, 5th, 8th and 14th Amendments to the Pa. and U.S. Constitutions.

5.      Declaratory relief that the practices, policies, norms, secret policies, catch and release systems and protocols promulgated or lack thereof by the Defendant's inconsistent with law as mentioned herein are void and of no force and effect, unconstitutionally ratified, evidenced as a reckless and callous indifference to the Plaintiff's state and federally protected rights at all times relevant herein.

6.      Declaratory relief issued that the actions of the Defendant's constitute, infliction of pain and suffering, humiliation, emotional distress, cruel and unusual punishnent and denial of due process as mentioned at length herein.

7.      Issue preliminary and permanent injunctions sufficient to rectify the unconstitutional and unlawful acts, policies, practices and omissions complained of herein.

8.      Retain jurisdiction over the defendant's and their agents and each of them unitl such time as the Court is satisfied that the unlawful policies, practices, amendments, acts and omissions complained of herein.

9.      Award Plaintiff's punitive damages against each Defendant individually, jointly and severly in an amount determined at trial.

10.     For the costs of this action, including reasonable attorney fees.

11.     For any and all such relief as the Court may find to be just and proper.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CLASS ACTION**

David **HARRIS**, Yafest **OLIVER**, Craig **JACKSON**, Hayden **MARSHALL**, Devon **WATSON**, Bilal **LEWIS**, Johnny **ALEXANDER**, et al.,
Plaintiffs,
vs.
**SECRETARY GEORGE LITTLE, FORMER SECRETARY JOHN WETZEL, FORMER SECRETARY JEFFREY BEARD, PA DOC etal.,**
Defendants.

Docket No._____

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT**

# (AFFIRMATION)

The Plaintiff's and members of this Class Action Complaint hereby swear and affirm under penalties that the foregoing is true and correct and based upon personal knowledge, belief and information and not meant to mislead, pursuant to (18 pa. C.S.A. subsection 4904); (28 U.S.C. subsection 1746).


Mr. David Harris FC-7039

/s/_____
State Institutuion at Phoenix

Mr. Yafest Oliver JM-3732

/s/_____
State Institution at Phoenix

Mr. Craig Jackson JE-7374

/s/_____
State Institution at Phoenix

Mr. Hayden Marshall HK-7938

/s/_____

**29**

State Institution at Phoenix

Mr. Devon Watson LA-4948

/s/ _Devon Watson_

State Institution at Phoenix

Mr. Bilal Lewis MD-9200

/s/ _Bilal Lewis_

State Institution at Phoenix

Mr. Johnny Alexander BQ-4879

/s/ _Johnny Alexander_

State Institution at Phoenix

9/5/22

SCI Phoenix
1200 Mokychic Drive
Collegeville, Pa. 19426

30

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**CLASS ACTION**

David **HARRIS**, Yafest **OLIVER**, Craig **JACKSON**, Hayden **MARSHALL**, Devon **WATSON**, Bilal **LEWIS**, Johnny **ALEXANDER**, et al.,
Plaintiffs,

vs.

**SECRETARY GEORGE LITTLE, FORMER SECRETARY JOHN WETZEL, FORMER SECRETARY JEFFREY BEARD, PA DOC etal.,**
Defendants.

Docket No._____

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT**

# (CERTIFICATE OF SERVICE)

The Plaintiff's and members of this Class Action Complaint, hereby certify that we I did in fact authorize service of this complaint to the United States District Court to begin original process and that it was served by Mr. David Harris, A member of the Class who served the one copy of the attached Class actionupon the person listed below by first class U.S. mail as follows:

Clerk Of Court Office
IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Mr. David Harris FC-7039

/s/ _____
State Instituituion at Phoenix

Mr. Yafest Oliver JM-3732

/s/ _____
State Institution at Phoenix

31

Mr. Craig Jackson JE-7374

/s/ *Craig Jackson*

State Institution at Phoenix

Mr. Hayden Marshall HK-7938

/s/ *Hayden Marshall*

State Institution at Phoenix

Mr. Devon Watson LA-4948

/s/ *Devon Watson*

State Institution at Phoenix

Mr. Bilal Lewis MD-9200

/s/ *Bilal Lewis*

State Institution at Phoenix

Mr. Johnny Alexander BQ-4979

/s/ *Johnny Alexander*

State Institution at Phoenix

9/5/22

SCI Phoenix
1200 Mokychic Drive
Collegeville, Pa. 19426

32

David Harris    FC 7039

SCI - Phoenix

1200 Mokychic Drive

Collegeville, PA 19426

PA DEPARTMENT OF
CORRECTIONS
INMATE MAIL

U.S.M.S.
X-RAY

United States Courthouse

601 Market Street

Philadelphia, PA 19105-1797

RECEIVED
SEP