IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID HARRIS, *et al.*, : | |
|     Plaintiffs, : | |
| : | |
| v. : | No. 22-cv-3715 |
| : | |
| SECRETARY GEORGE LITTLE, : | |
| *et. al.*, : | |
|     Defendants. : | |

# **O P I N I O N**
### Plaintiffs' Motion for Class Certification, ECF No. 54 – Denied

**Joseph F. Leeson, Jr.**                                                                         **March 4, 2024**
**United States District Judge**

## I.   INTRODUCTION

The underlying Complaint brings a putative class action under 42 U.S.C. § 1983, alleging that the Defendants violated Plaintiffs' Eighth and Fourteenth Amendment rights. They assert these claims on behalf of thousands of Pennsylvania prisoners in some form of solitary confinement and seek monetary, injunctive, and declaratory relief. The matter is now before the Court on Plaintiffs' Motion for Class Certification. *See* Mot., ECF No. 54. For the reasons that follow, the Motion is denied.

## II.   BACKGROUND

The Court restates the factual background as laid out in its prior Opinion resolving Defendants' Motion to Dismiss.

### a. The Restricted Release List[]

Under a policy of the Pennsylvania Department of Corrections, prisoners who pose a threat to life, property, themselves, staff, other inmates, the public, or the secure or orderly running of the prison facility may be placed on the Restricted Release List (the RRL). The Executive Deputy Secretary for Institutional Operations

1

reviews requests to place prisoners on the RRL and will approve the request if transferring the prisoner to another facility or jurisdiction would not alleviate the security concern. When determining whether to place a prisoner on the RRL, the Executive Deputy Secretary considers, among other things, the prisoner's assaultive history, escape and escape attempt history, and any threat to the orderly operation of the facility.

Once a prisoner is placed on the RRL, they may be subject to various forms of administrative custody or solitary confinement. The policy requires that the reasons for placing a prisoner in solitary confinement be explained to the prisoner in writing during a hearing, and the prisoner may respond to the rationale. A summary of that hearing is then provided to the prisoner, and the prisoner may appeal the decision within two working days of the completion of the hearing.

Under the policy, a newly placed prisoner on the RRL has their status reviewed every seven days. After being on the RRL for sixty days, the prisoner's status on the RRL is reviewed, at the latest, every ninety days. Finally, an annual review of the prisoner's status on the RRL is also performed, which involves insight from a counselor assigned to the prisoner, the facility staff, and the prisoner's Unit Manager. A report that indicates whether the prisoner's status on the RRL should be continued is generated and circulated to various members of the administration, including to the Executive Secretary. Any decision to continue the prisoner's placement on the RRL may be appealed.

In April 2022, a new version of this program went into effect. Under the new policy, the final decision on whether to continue RRL status is made by the Executive Deputy Secretary.

*b. Plaintiffs' Allegations*

Plaintiffs are all *pro se* prisoners, and their allegations paint the RRL in a different light than that of the RRL's "official" policy.

Plaintiffs all allege that they have been in solitary confinement for many years: Plaintiff Harris since 2006; Plaintiff Oliver since 2014; Plaintiff Jackson since 2018; Plaintiffs Marshall and Lewis for four years continuously; and Plaintiff Alexander has "been held in solitary confinement for years." Compl. ¶ 66. They also allege that they have been held in solitary confinement without any explanation as to why and have not been given an opportunity to challenge their RRL status. *See generally* Compl. Any review of their RRL status, according to Plaintiffs, is merely perfunctory.

Plaintiffs allege that they are "deprived of social interaction, environmental stimulation, [and] proper mental health diagnosis." *Id*. at ¶ 43. According to Plaintiffs, the time they are allowed out of their cells is spent in "a yard full of feces and urine." *Id*. at ¶ 46. Also, their cells are "illuminated by artificial lights, 24 hours a day." *Id*. at ¶ 48.

Plaintiffs believe that the RRL is simply a new name for an ongoing, secret "catch and release system" designed to keep prisoners, such as themselves, perpetually in

solitary confinement. *See generally* Compl. According to Plaintiffs, their RRL status subjects them to illegal experimentation, and the Department of Corrections runs its program by denying Plaintiffs a chance to appeal and denying any meaningful reviews. Plaintiffs allege that the goal of this practice is to "drive [prisoners] crazy in long solitary confinement without treatment, then turn around and lean on their behavior in attempts to continue to torture those [prisoners] until they either kill themselves or hurt someone as a result of the mental health problems." *Id*. at ¶ 53.

Plaintiffs further allege that Defendants "knew the risks proposed by long term solitary confinement" and knew that Plaintiffs were suffering from the negative effects of long term solitary confinement because Plaintiffs made reports to the "[Pennsylvania Department of Corrections] psychiatrist and psychologist departments, prison guards, counselors, teachers, program review committees and central office where the Secretaries of the [Pennsylvania Department of Corrections] [is] located, and yet all of these Secretaries failed to take reasonable measures to end" Plaintiffs' RRL status. According to Plaintiffs, Defendants approved and implemented the RRL policy that "forbids the Plaintiffs from ever contesting, knowing of or appealing their placement in the RRL."

*Harris v. Little*, No. 22-CV-3715, 2023 WL 4669024, at *1–2 (E.D. Pa. July 20, 2023) (footnote omitted).

Elsewhere in that Opinion, the Court construed the Complaint to allege "two constitutional claims against Defendants via 42 U.S.C. § 1983: (1) a claim of cruel and unusual punishment, in violation of the Eighth Amendment; and (2) a claim of denial of due process, in violation of the Fourteenth Amendment." *Id*. at *3. The Court then dismissed Plaintiffs' claims to the extent they challenged whether the RRL policy was constitutional. *Id.* Thus, all that remains are Plaintiffs' due process claims. It is that claim to which the Court will apply the Rule 23's class certification prerequisites.

On August 1, 2023, this Court entered an Order granting, in part, Plaintiffs' Request to Appoint Counsel, staying the action, and referring the matter to the District's Prisoner Civil Rights Panel. *See* ECF No. 69. After six months, on February 1, 2024, this Court entered an Order lifting the stay, removing the case from the Panel, and directing Plaintiffs to file a reply to Defendants' Response in Opposition to Plaintiffs' Motion for Class Certification. *See* ECF No.

79. Since that date, Plaintiffs Craig Jackson, Hayden Marshall, Yafest Oliver, and Johnny Alexander filed replies. *See* ECF Nos. 82-85. The matter is now ready for disposition.

### III. LEGAL STANDARDS

#### A. Class Certification – Rule 23(a) Prerequisites – Review of Applicable Law

Class certification is governed by Rule 23(a)'s four prerequisites: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a). Numerosity is a consideration of the judicial economy and requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also In re Modafinil Antitrust Litig.*, 837 F.3d 238, 252-53 (3d Cir. 2016) (noting "judicial economy" as a core purpose of the numerosity prerequisite). Generally, joinder is presumed impracticable "when the potential number of class members exceeds forty." *Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 896 (3d Cir. 2022). The second prerequisite, commonality, requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy commonality, each class member's claim "must depend upon a common contention" such that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]he typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998). The final prerequisite, adequacy of representation, requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Generally, this prerequisite considers "the competency of class counsel and conflicts of interest." *Gen. Tel. Co. of Sw. v. Falcon*, 457

U.S. 147, 158 n.13 (1982). "[T]he party proposing class-action certification bears the burden of affirmatively demonstrating by a preponderance of the evidence her compliance with the requirements of Rule 23." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015).

IV. ANALYSIS

The majority of Plaintiffs' Motion details a history of race and punishment in America. However, what Plaintiffs ask this Court to do is rooted in law and not policy or history. Class actions are a legal device by which class representatives litigate issues on behalf of all class members. They are unique in that their outcomes bind the absent members. To protect the rights of these absent members, Rule 23's class certification requirements—numerosity, commonality, typicality, and adequate representation—are designed to "ensure[] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Dukes*, 564 U.S. at 349. Here, class certification is inappropriate because, at the very least, Plaintiffs cannot satisfy the commonality or adequacy requirements

A. **Commonality**

Again, following this Court's Opinion and Order entered July 20, 2023, all that remains of Plaintiffs' claims are whether Defendants administered the RRL policy in an "unofficial" way which violated Plaintiffs' due process rights. *See Harris*, 2023 WL 4669024 at * 4. Fleshed out, Plaintiffs allege that Defendants ignore the proper guidelines and fail to perform the required RRL reviews, thereby violating Plaintiffs' procedural due process rights by keeping them on the RRL without sufficient review. However, the facts to prove this vary greatly from prisoner to prisoner.

As noted, to satisfy commonality, each class member's claim "must depend upon a common contention" such that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. But

5

that is not the case here.  Plaintiffs seek to bring suit on behalf of the "nearly 200 other prisoners on the RRL and more than 2,000 other prisoners under different forms of long-term solitary confinement in the Pennsylvania Prison system."  Pls.' Mot. at 8.  Those procedural due process claims require individualized determinations for thousands of prisoners.  Consider the factual inquires that typically accompany due process challenges to RRL placement.  For instance, did each prisoner *actually receive* a periodic review?  See *Bramble v. Wetzel*, No. 4:20-CV-2394, 2022 WL 55021 at *10 (M.D. Pa. Jan. 5, 2022).  Did the prison comply with a policy to, for example, provide written notice of the reason for placing that prisoner in administrative custody? See *Reaves v. Rossman*, No. 3:21-CV-01282, 2022 WL 18539772 at *6-7 (M.D. Pa. July 1, 2022), *report and recommendation adopted*, No. 3:21-CV-1282, 2023 WL 1348508 (M.D. Pa. Jan. 31, 2023).  Did the prison officials prevent the prisoner from appealing his RRL placement despite a policy permitting such?  *Tucker v. Wetzel*, No. 1:22-CV-631, 2023 WL 322442 (M.D. Pa. Jan. 19, 2023).

These are all viable claims when brought as individuals.  However, the problem with bringing these claims as a class is that the answers to these questions are fact and individual dependent and what is true for Jackson may not be true for Harris.  As the Court in *Dukes* reasoned, it is not enough that each claimant "have all suffered a violation of the same provision of law."  *Dukes*, 564 U.S. at 350.  Thus, commonality cannot be met because these variable issues differ from prisoner to prisoner and cannot be resolved in one fell swoop.  For the reasons stated, the Court cannot certify the class because the class claims lack commonality under Rule 23(a).

### B.    Adequacy of Representation

Nor can Plaintiffs satisfy the adequacy of representation requirement.  Courts have routinely held that *pro se* prisoners and other non-attorneys cannot adequately represent a class.

*See Lewis v. City of Trenton Police Dep't,* 175 F. App'x 552 (3d Cir. 2006); *Planker v. Atkins,* No. CV 20-4264 (MCA), 2023 WL 3168027 (D.N.J. Apr. 28, 2023); *Mable v. Wetzel*, No. 2:20-CV-01771-CRE, 2022 WL 1620079, at *4 (W.D. Pa. May 23, 2022); *Graham v. Rudovsky*, No. CV 21-2759, 2021 WL 5040479 (E.D. Pa. Oct. 29, 2021); *Stokes v. Carney*, No. 21-CV-1435, 2021 WL 4477185 (E.D. Pa. Sept. 29, 2021).

On August 1, 2023, this Court referred the matter to the Prisoner's Civil Rights Panel in an attempt to find a volunteer attorney willing to represent Plaintiffs. However, that effort was unsuccessful, and Plaintiffs remain *pro se*.[1] Accordingly, they cannot adequately represent the class.[2]

## V.    CONCLUSION

Because Plaintiffs' claims are too fact and individual dependent to satisfy the commonality prerequisite and because *pro se* prisoners cannot adequately represent a class of persons, class certification is denied.

A separate Order follows.

BY THE COURT:

---

[1] In their Motion, Plaintiffs represent that they have reached out to the ACLU and the NAACP for representation. However, to date, no attorney has entered an appearance on their behalf. In their reply brief, Plaintiffs again ask that this Court appoint an attorney. Notwithstanding the procedural posture in which the request was made, the Court again declines appoint counsel because the class action certification holds no merit where Plaintiffs cannot satisfy commonality. *See Montgomery v. Pinchak*, 294 F.3d 492, 498–99 (3d Cir. 2002) ("As a threshold matter, a district court must assess whether the claimant's case has some arguable merit in fact and law.").

[2] Because "[f]ailure to meet any of Rule 23(a) or 23(b)'s requirements precludes certification," the Court need not address the other prerequisites. *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 147 (3d Cir. 2008).

                 */s/ Joseph F. Leeson, Jr.*
                 JOSEPH F. LEESON, JR.
                 United States District Judge