IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID HARRIS, *et al.*, | : | |
|    Plaintiffs, | : | |
| | : | |
| v. | : | No. 22-cv-3715 |
| | : | |
| SECRETARY GEORGE LITTLE, *et. al.*, | : | |
| | : | |
|    Defendants. | : | |

**O P I N I O N**
Defendants' Motion for Summary Judgment, ECF No. 96 – Granted

**Joseph F. Leeson, Jr.**                                                          **March 6, 2025**
**United States District Judge**

## I.  INTRODUCTION

Plaintiffs are pro se prisoners who, at the outset of this litigation, were on the Pennsylvania Department of Correction's Restricted Release List. They claimed that the conditions of their confinement violated their Eight Amendment rights to be free from cruel and unusual punishment. In addition, they claimed that the review of their restricted confinement violated their Fourteenth Amendment Due Process rights. Before the Court is Defendants' Motion for Summary Judgment. For the reasons that follow, the Motion is granted.

## II.  BACKGROUND

### A.  Procedural Background

Given the convoluted pretrial litigation in this case, the Court finds it appropriate to start with the procedural background.

*Complaint*

The lawsuit began with a Complaint by Plaintiffs David Harris, Yafest Oliver, Craig Jackson, Hayden Marshall, Devon Watson, Bilal Lewis, and Johnny Alexander. *See* ECF No. 2. These original Plaintiffs sought to bring a class action against George Little (Secretary of the Pennsylvania Department of Corrections), John Wetzel (the former Secretary of the Pennsylvania Department of Corrections), Jeffrey Beard (also a former Secretary of the Pennsylvania Department of Corrections), and the Pennsylvania Department of Corrections more broadly. *See id*. The Complaint pursued causes of action brought under 42 U.S.C. § 1983, alleging that the Defendants violated their Eighth and Fourteenth Amendment rights and sought monetary, injunctive, and declaratory relief. *Id*.

*Interim Litigation*

Not long after, and before any Rule 12 Motion was filed, Plaintiff Devon Watson withdrew from the suit. *See* ECF No. 38. He pursued his own lawsuit which was docketed in this Court at 2:23-cv-3246. *See Watson v. Wetzel*, No. 2:23-CV-3246, 2024 WL 5096209 (E.D. Pa. Dec. 12, 2024) (granting summary judgment on Watson's claims). On April 21, 2023, Defendants moved to dismiss the complaint in the instant case. *See* ECF No. 53. On May 10, 2023, Plaintiffs moved to certify their class. *See* ECF No. 54.

*Motion to Dismiss*

In its July 20, 2023, Opinion and Order, the Court granted and denied, in part, the Motion to Dismiss. *See* ECF Nos. 63, 64. In particular, the Court dismissed all claims against the Pennsylvania Department of Corrections and Former Secretary Beard. *See Harris v. Little*, No. 22-CV-3715, 2023 WL 4669024 at *5 (E.D. Pa. July 20, 2023). The Court also dismissed the claims against Secretary Wetzel in his official capacity and all claims for money damages against Secretary Little in his official capacity. *Id*. Finally, the Court also narrowed the scope of

2
030625

the claims brought by Plaintiffs. In particular, the Court dismissed the claims insofar as they "challenge[d] whether the RRL policy is constitutional." *Id*. at 3. However, they survived insofar as "they allege[d] Defendants administer the RRL policy in an 'unofficial' way that violates their constitutional rights." *Id*. at 4.

*Second Period of Interim Litigation*

Since part of the Complaint survived the Motion to Dismiss, the Court partially granted Plaintiffs' request to appoint counsel by referring the action to the District's Prisoner Civil Rights Panel for six months while simultaneously staying the action. *See* ECF No. 69. No attorney took the case and after six months, the suit was removed from the panel and resumed. *See* ECF No. 79.

On February 15, 2024, Plaintiff Harris wrote the Court and indicated his intention to withdraw from the suit because he felt he was subject to retaliation for filing the litigation. *See* ECF No. 81. On March 4, 2024, the Court issued an Order cautioning Harris that the prison staff could not legally retaliate against prisoners for engaging in protected conduct but nevertheless indicated that it would indeed dismiss Harris from the case after 30 days in the event he did not write to the Court with a change of mind. *See* ECF No. 86. When no further letter came, the Court dismissed Harris on April 30, 2024. *See* ECF No. 89.

In an Opinion and Order issued March 4, 2024, the Court denied class certification, reasoning that Plaintiffs' claims lacked sufficient commonality and that Plaintiffs could not adequately represent the class. *See* ECF Nos. 87-88; *see also Harris v. Little*, No. 22-CV-3715, 2024 WL 915562 (E.D. Pa. Mar. 4, 2024).

*Motion for Summary Judgment*

Now before the Court is Defendants' Motion for Summary Judgment. *See* ECF No. 96. In an effort to reorient itself, the Court clarifies that the remaining Plaintiffs are Yafest Oliver, Craig Jackson, Hayden Marshall, Bilal Lewis, and Johnny Alexander ("Remaining Plaintiffs"). The remaining Defendants are Secretary George Little and Former Secretary John Wetzel. The claims that remain are the Eighth and Fourteenth Amendment claims.

In their Motion, Defendants seek Summary Judgment, arguing, *inter alia*, that there exists no genuine dispute as to any material fact on the remaining claims and that they are entitled to qualified immunity. Remaining Plaintiffs did not file a timely response. On January 10, 2025, the Court ordered Remaining Plaintiffs to respond not later than February 10, 2025. *See* ECF No. 97. On February 18, 2025, Plaintiff Alexander filed a response. *See* ECF No. 98. To date, no other response has been filed.

  **B.**  **Undisputed Facts[1]**

    *1.*  *Administrative Custody ("AC"), The Restricted Release List ("RRL"), and the Intensive Management Unit ("IMU")*

The conditions and procedures pertaining to Administrative Custody and the RRL are at the center of this litigation. Administrative Custody is a status of non-disciplinary confinement which provides for closer supervision of its inmates than those in general population. *See generally* ECF No. 95-1 ("DC-ADM 802") at Section 3(A)(1). The inmate is provided written notice of the reasons for being placed in AC. Those placed on AC are entitled to an appeal. Placement is also subject to the following review: 1) every seven days for the first two months;

---

[1] By failing to respond to Defendants' Statement of Material Facts, Remaining Plaintiffs have waived the right to controvert the facts asserted. *See Drummer v. Hosp. of Univ. of Pennsylvania*, 455 F. Supp. 3d 160, 167 (E.D. Pa. 2020). While Jackson filed a Response, he did not respond to the Statement of Material Facts' specific contentions. Insofar as his response controverts a specific fact enumerated in Defendants' Statement of Material Facts, the Court does not include it in this section.

2) every thirty days thereafter; and 3) after 60 days, the Program Committee Review ("PRC") interviews the inmate every 90 days. Ordinarily, those placed in AC are housed in a Security Level 5 Housing Unit. In that unit, the inmates are initially afforded "1 hour per day, 5 days per week, of exercise, increasing to 3 hours per day, 7 days per week after the initial thirty days." ECF No. 95, Defendants' Statement of Material Facts ("DSOF") ¶ 6. Other privileges such as phone calls, commissary, radio, and tablets are available after 90 days.

"The Restricted Release List is a list of inmates who may only be placed and released from Administrative Custody status upon prior approval of the Executive Deputy Secretary for Institutional Operations [EDSI]." *Id*. ¶ 8. Criteria for placement on the RRL includes assaultive, sexual abuse, and escape history as well as general risk of threat to the orderly operation of the facility. The process for placement on the list, as provided for in the DC-ADM 802, is as follows. The assigned counselor initiates the assignment by amassing various forms, vote sheets, a psychological review and other supporting documentation before forwarding the same to the Unit Manager. *See* DC-ADM 802, Section 1(C). The Unit Manager then initiates an "RRL Form" and provides their reason for recommending the inmate being placed on the RRL. DSOF ¶ 11. The Form is then circulated to various DOC personnel who indicate their own reasons in favor of or against placing the inmate on the RRL. The EDSI then interview each prospective inmate and makes the ultimate determination for placement on the RRL. Those on the RRL are reviewed annually by DOC personnel. Every ninety days, psychology staff interview and assess any inmate who has remained in AC status for more than thirty days.

The IMU is a program designed to "house and provide socialization opportunities for individuals confined to a SL5 setting for extended periods of time." DSOF ¶ 15. It is a six-tiered pathway through which an inmate with an assaultive history can work toward removal

from the RRL and back into general population. The most restrictive phase, Phase Six, lasts thirty days. From there, the inmate progresses into Phases Five through Three which each last nine months. Ultimately, Phase One of the program is completed in general population. Progress through the Phases is at the discretion of the PRC who reviews the conduct of the inmate every 90 days.

"Even at the most restricted level of the IMU, Phase Six, an inmate still receives the following privileges: 2 hours per day of exercise out of cell, 7 days per week; 1 phone call per week; video visits 1 time per week; kiosk privileges; radio/tv privileges; in-cell programming; weekly unit management contact and psychological contact as required by DOC 13.8.1; showers 3 times per week; commissary privileges; access to mini law-library and recreational book; and in-cell games, like puzzles." DSOF ¶ 24.

By Phase Two of the IMU, "an inmate receives the following privileges: 3 hours per day of exercise, out of cell, 7 days per week, with up to 2-3 other inmates; 4 phone calls per week; 4 tablet/kiosk (email) connections per week; up to 6 video visits per month; tv/radio privileges; participation in group treatment; weekly unit management contact and psychological contact as required by DOC 13.8.1; showers 5 times per week; increased spending limit in commissary; group study; access to mini law library and 3 recreational books; ability to congregate in small groups for games like chess, checkers and dominoes; ability to participate in employment; and one meal per day with other Phase [Two] or [Three] inmates." DSOF ¶ 28.

    2.    *The Remaining Plaintiffs*

*Yafest Oliver* has a significant history of prison misconducts, accruing 29 misconducts since the start of his imprisonment — many of which were violent. He was also involved in organizing a 2015 riot in which 250 inmates took the South Yard of SCI-Houtzdale. Oliver was

placed on the RRL on June 16, 2015. In April of 2022, Oliver began participating in the IMU and was immediately placed in Phase Three. Oliver progressed through the IMU and was removed from the RRL on April 4, 2023.

*Johnny Alexander* also has a considerable history of prison misconducts — seven of which are violent. Alexander was placed on the RRL on September 9, 2019. While he initially resisted the IMU program, he began to participate in December of 2023. However, he has since seen little progress through the program as he has declined to undertake its requisite coursework.

*Craig Jackson* has accrued 48 misconducts including seventeen for violent assaults or fighting. He was placed on the RRL on March 11, 2019. Jackson enrolled in the IMU in October of 2021. By October of 2024, he was removed from the RRL.

*Hayden Marshall* has accrued 40 prison misconducts including seven for violent assault or fighting. He was placed on the RRL on July 30, 2019. By December of 2021, Marshall had begun the IMU program and advanced to Phase Five. Marshall made steady progress through the program and was released to general population in May of 2024.

*Bilal Lewis* has garnered 68 prison misconducts — 19 of which were violent. He was placed on the RRL on November 26, 2019. In early 2021, he was given an orientation of the IMU program and began the same shortly after. He has had both progress and setbacks within the program. In September of 2022, while in Phase Two of the program, Lewis was recommended for a prison job. While he was removed from the RRL in December of 2023, he quickly accrued another misconduct and was placed back onto the RRL. He has since been transferred to the Management Control Unit.

### III.    LEGAL STANDARDS

    **A.    Summary Judgment – Review of Applicable Law**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court must consider the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Where a party fails to oppose a summary judgment motion, the facts may be deemed undisputed. *See* Fed. R. Civ. P. 56(e)(3); *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). However, the court must still analyze the motion to determine if summary judgment is appropriate, "that is, whether the moving party has shown itself to be

030625

entitled to judgment as a matter of law." *See Anchorage Assocs.*, 922 F.2d at 175. "Where the moving party does not have the burden of proof on the relevant issues, [as here] . . . the district court must determine that the deficiencies in the opponent's evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

    **B.**    **42 U.S.C. §1983 Claims Generally – Review of Applicable Law**

42 U.S.C. § 1983 is the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, a "defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode*, 845 F.2d at 1207. Moreover, "[b]ecause vicarious liability is inapplicable to ...§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

    **C.**    **Cruel and Unusual Punishment – Prison Conditions — Review of Applicable Law**

"The Eighth Amendment 'prohibits any punishment which violates civilized standards and concepts of humanity and decency.'" *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992)). In evaluating an Eighth Amendment claim challenging prison conditions, the Court applies a two-part test: "(1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" *Johnson v.*

*Pennsylvania Dep't of Corr.*, 846 F. App'x 123, 128 (3d Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

> D.  **Fourteenth Amendment – Procedural Due Process – Prisoner – Review of Applicable Law**

To succeed on a procedural due process claim, the plaintiff must first demonstrate that they had a liberty interest protected by the Fourteenth Amendment and, second, that they did not receive the process they were due in being deprived of that interest. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). In *Sandin v. Conner*, "the Supreme Court held that a prisoner is deprived of a state-created liberty interest if the deprivation 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Powell v. Weiss*, 757 F.3d 338, 344 (3d Cir. 2014) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995). With regard to the second step of the inquiry, familiar notions of notice and opportunity to be heard shape the Court's consideration of whether adequate process was provided. *Shoats*, 213 F.3d at 144-45.

## IV.  ANALYSIS

### A.  Exhaustion

Defendants argue that the claims should be dismissed for failure to exhaust because "Plaintiffs have provided no evidence of exhaustion of their administrative remedies prior to bringing suit." ECF No. 96 at 28. However, because exhaustion is an affirmative defense, it is in fact Defendants who hold that burden. *See Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002).

### B.  Eighth Amendment Claims

Next, Defendants argue that they are entitled to summary judgment because there exists no genuine dispute as to whether the conditions of the Remaining Plaintiffs' confinement amounted to cruel and unusual punishment. The Court agrees.

"The Eighth Amendment does not mandate that prisons be free of discomfort." *Ashton v. Luzerne Cnty. Corr. Facility*, No. CIV A 1:08-CV-1095, 2009 WL 2168730, at *2 (M.D. Pa. July 15, 2009). Instead, the claimant must show that they were deprived of the "minimal civilized measure of life's necessities." *See Johnson v. Pennsylvania Dep't of Corr.*, 846 F. App'x 123, 128 (3d Cir. 2021) (quoting *Farmer*, 511 U.S. at 834.) For instance, "exercise, sleep, social contact and interaction, and environmental stimulation" has been "recognized in a wide variety of cases as basic human needs." *Johnston v. Wetzel*, 431 F. Supp. 3d 666, 679 (W.D. Pa. 2019).

Here, the undisputed facts do not reflect a deprivation of any of these needs for any of the Remaining Plaintiffs. Rather, Defendants argue, and this Court agrees, that the conditions of the Remaining Plaintiffs' confinement track the standards generally found constitutional by Courts in this jurisdiction. *See e.g. Wayne v. Wetzel*, No. CV 21-4209, 2024 WL 3696467 at *5-8 (E.D. Pa. Aug. 7, 2024) (finding that the conditions outlined in the various Phases of the IMU did not amount to cruel and unusual punishment). Further, simply being placed in Administrative Custody or on the RRL does not violate the Eighth Amendment. *See Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997); *see also Bramble v. Wetzel*, No. 4:20-CV-2394, 2022 WL 55021 (M.D. Pa. Jan. 5, 2022) ("[I]t is well settled that mere placement in Administrative Custody does not violate the Eighth Amendment."); *see also Booze v. Wetzel*, 2014 WL 65283, at *11 (M.D. Pa. Jan. 8, 2014) ("[M]ere placement on AC, on the RRL, does not violate the Eighth Amendment"). Instead, the Remaining Plaintiffs must adduce evidence that the conditions of their confinement deviated from that which is provided for by the IMU. They have not done so. Instead, the undisputed facts reflect as follows.

*Yafest Oliver*

In April of 2022, Oliver was placed in Phase Three of the IMU and was afforded the privileges and conditions provided for in the IMU Handbook.  In particular, he was afforded additional time out of his cell and additional time to socialize and eat with other inmates.  He was also given three hours of exercise each day, four calls each week, and significant access to tablets and showers.  As he progressed through the IMU, he was afforded even more privileges including the ability to obtain a prison job.

*Craig Jackson*

In October of 2021, Jackson was enrolled in the IMU, beginning at Phase Six.  Even at that Phase, Jackson was afforded, *inter alia*, two hours each day for exercise, one phone call and video visit each week, radio/tv privileges, and commissary privileges.  By December, he was approved for Phase Five of the IMU and by December of 2023, Phase Four.  In Phase Four, Jackson was afforded more showers, visits, calls, books, and out of cell socialization.  Once he was moved to Phase Three, Jackson was permitted to move about the block unrestrained.  In October of 2024, Jackson was removed from the RRL altogether.

*Hayden Marshall*

Marshall was placed in Phase Six of the IMU in May of 2021.  Marshall made slower but steady progress through the program, reaching Phase Three in August of 2023.  By then, he was permitted to move about the block unrestrained, allowed four phone calls each week, and could congregate with four other inmates during exercise.  He too was removed from the RRL in May of 2024.

*Bilal Lewis*

Lewis started the IMU program in early 2021.  By the end of 2021, he was recommended for Phase Two of the IMU in which he was afforded, *inter alia*, five showers each week, three

hours of exercise each day, the ability to congregate with other inmates, four call each week, and out of cell meals. He was recommended for a prison job in September of 2022. While he was released from the RRL in December of 2023, he quickly returned to the RRL after threatening multiple staff members. He has since been placed in the Management Control unit in which he "is permitted to benefit from activities and privileges of general population, but within the specialized general population housing unit." DSOF ¶ 132.

In their Complaint, Remaining Plaintiffs, as a whole, summarily asserted that they were "deprived of social interaction, environmental stimulation, proper diet, [and] proper mental health diagnosis because of their IMU and RRL designation." Compl. ¶ 43. They also averred that they were subject to strip searches prior to leaving their small, constantly lit cells. However, none of the Remaining Plaintiffs have gone beyond the pleadings or offered particular facts in the record to create a genuine dispute as to whether the conditions of their confinement caused a sufficiently serious deprivation. *See Exum v. Little*, No. 2:23-CV-03891-JDW, 2024 WL 4821470 (E.D. Pa. Nov. 15, 2024) (granting summary judgment where plaintiff failed to "come forward with evidence to demonstrate that the conditions on RRL posed a substantial risk of serious harm.")

Indeed, Alexander is the only Remaining Plaintiff who filed an opposition to the instant Motion. His Response is a memorandum mixed with facts and law. However, of the facts averred, there are just two facts worth noting with respect to his Eighth Amendment claim. First, he claims he was stripped naked and deprived of bedding in a poorly insulated cell during winter. However, he also avers that this incident took place outside of the scope of the complaint as it occurred before being placed on the RRL. Second, he states that a Corrections Officer (not any

named Defendant) tore up a picture of his father. However, this event, whether true and however upsetting, does not regard the conditions of his confinement.

Accordingly, because there exists no genuine dispute as to whether the conditions of any of the Remaining Plaintiffs' confinement were "sufficiently serious" or posed a substantial risk of harm, the Court finds that Defendants are entitled to Summary Judgment on all Eighth Amendment claims. *See Johnson*, 846 F. App'x at 128.

### C. Fourteenth Amendment Claims

Remaining Plaintiffs also assert that they have been placed on the RRL and held there without any legitimate explanation or opportunity to challenge their status in violation of their procedural due process rights. *See* Compl. ¶¶ 26, 33, 54(e).

"In analyzing a procedural due process claim, the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Shoats*, 213 F.3d at 143. Should the Court find an interest protected by the Fourteenth Amendment, "the question then becomes what process is due to protect it." *Id*. Assuming *arguendo* that each of the Remaining Plaintiffs can establish a liberty interest, Defendants are entitled to summary judgment on each claim because there exists no genuine dispute that each Remaining Plaintiff received the process they were due.

> When considering due process claims based upon allegations of prolonged confinement in RRL status, the Third Circuit has held that "an 'informal, nonadversary review' at which the prisoner has the opportunity to state his views, satisfies the requirements of due process." *Shoats*, 213 F.3d at 144 (8 years RRL detention). In this setting "the periodic reviews conducted by the PRC ... comport with the minimum constitutional standards for due process." *Id*. at 147. *See Washington–El v. Beard*, 562 F. App'x 61, 63 (3d Cir. 2014); *Booze*, 2015 WL 5173937, at *7.

*Bramble*, 2022 WL 55021, at *9. Also, "[t]he reviews must be meaningful in the sense that the review is not conducted in 'rote fashion,' *see Sourbeer v. Robinson*, 791 F.2d 1094, 1101 (3d

Cir. 1986), becoming an ostensible mechanism for indefinite restrictive confinement." *Watson v. Wetzel*, No. 2:23-CV-3246, 2024 WL 5096209, at *10 (E.D. Pa. Dec. 12, 2024). The undisputed facts and the adjoining record demonstrate that each Remaining Plaintiff received the requisite periodic review and opportunity to be heard.

### *Yafest Oliver*

Oliver's initial placement on the RRL followed the aforementioned procedures. ECF No. 95-10. The Vote Sheet reflects Oliver's assaultive history and his role in the 2015 SCI Houtzdale prison riot which harmed five prison staff. After being placed on the RRL, he continued to accrue misconducts. In April of 2022, Oliver agreed to participate in the IMU. He steadily progressed through the program and received regular review of his RRL status. ECF Nos. 95-6, 7. Indeed, the crux of Oliver's claim, and the Remaining Plaintiffs' claims, are not that they did not receive these reviews, but rather that these reviews were perfunctory. However, considering the undisputed facts and the record provided, the Court finds that there exist no facts from which a reasonable juror could infer the periodic reviews did not pass constitutional standards. Accordingly, Defendants are entitled to summary judgment as to Oliver's due process claim.

### *Craig Jackson*

Jackson's placement on the RRL also followed the aforementioned procedures outlined in the DC ADM 802. ECF No. 95-17. The undisputed facts reflect that Jackson was subject to the periodic review by the PRC once placed on the RRL. DSOF ¶¶ 91-93; ECF No. 95-19. In 2021, Jackson enrolled in the IMU and made steady progress through the program at substantially the same pace as provided for by the program's guidelines. He was ultimately removed from the RRL in October of 2024. Again, Jackson's due process claim is that the

reviews were merely perfunctory. However, he offers no evidence to substantiate this position which is also altogether belied by his ultimate release from the program. Accordingly, Defendants are entitled to summary judgment as to Jackson's due process claim.

*Hayden Marshall*

Marshall was placed on the RRL in June of 2019 following the same process as Oliver and Jackson. *See* ECF No. 95-22. His placement was precipitated by a series of assaults. ECF No. 95-21. While on the RRL, Marshall received regular review of his status by the PRC. DSOF ¶¶ 109-111; ECF No. 95-23. Marshall entered the IMU in 2021 and made steady progress through the program substantially along the timeline provided for in the IMU handbook. He was released from the RRL in May of 2024. Based on the undisputed facts and a review of the record, the Court finds that there exists no genuine dispute as to whether Marshall was afforded due process. While the basis of his claim is that the reviews were perfunctory, there exists no evidence of record from which any reasonable juror could find in his favor. Additionally, his progress through the IMU further belies any inference to that effect. Defendants are again entitled to summary judgment.

*Bilal Lewis*

Lewis was placed on the RRL following the same aforementioned procedure. *See* ECF No. 95-27. His placement was also precipitated by a number of misconducts, several of which were violent in nature. ECF No. 95-26. While on the AC more generally, his placement was regularly reviewed by the PRC in accordance with the DC-ADM 802. He also received regular mental health care while on the RRL, including an annual review of his mental health as well as his continued placement on the RRL. DSOF ¶¶ 134-136; ECF No. 95-28. Again, Lewis offers no evidentiary basis from which a reasonable juror may infer that these reviews were merely

perfunctory. Further, while Lewis has returned to restrictive custody, his earlier progress through the IMU undermines any inference that his reviews were perfunctory. Defendants are again entitled to summary judgment.

*Johnny Alexander*

Alexander was placed on the RRL following the same procedure outlined in the DC-ADM 802. ECF No. 95-13. This placement followed his considerable history of misconduct. ECF No. 95-12. While on the RRL, Alexander has received the periodic reviews afforded by the DC-ADM 802. ECF No. 95-14. Alexander's Response neither rebuts Defendants' Statement of Facts nor offers any other facts from which a reasonable juror may infer the reviews were perfunctory. Accordingly, Defendants are again entitled to summary judgment.

IV.   **CONCLUSION**

For the above noted reasons, the Court finds that Defendants are entitled to summary judgment on all claims.

A separate Order follows.


BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge